E.G., BY AND THROUGH HIS
NEXT FRIENDS, HIS PARENTS,
A.G. and J.G.,                                                                               PLAINTIFF

v.

ANCHORAGE INDEPENDENT
PUBLIC SCHOOLS; *et. al.*,                                                            DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Anchorage Independent Public Schools' motion to dismiss, [DN 22.] Plaintiff responded, [DN 27], and Defendant replied, [DN 28.] Fully briefed, this matter is ripe for adjudication. For the following reasons, Defendant's motion to dismiss, [DN 22], is **GRANTED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

BACKGROUND

Plaintiff E.G., a minor child ("Plaintiff" or "E.G."), brings this action through his parents and next friends, A.G. and J.G. pursuant to the Individuals with Disabilities Education Act ("IDEA") appealing the administrative Decision and Final Order of a panel of the Exceptional Children Appeals Board ("ECAB"). [DN 6 (Amended Complaint).] E.G. "has been diagnosed with autism, which affects his ability to learn and function in a school setting." [*Id.* at 3.] As such, pursuant to the IDEA, he "is eligible for specially designed instruction and related services to be provided by Anchorage" Independent Public Schools ("Anchorage"), the local educational agency ("LEA") responsible for E.G.'s education [*Id.*] E.G. attended Anchorage through his

eighth grade year, during which time Anchorage and E.G.'s parents worked together "to develop an effective individual educational plan ("IEP")." [*Id.* at 4.]

Anchorage does not offer education beyond the eighth grade, however. As such, "[a]t the conclusion of eighth grade, Anchorage contracts with neighboring districts to provide educational services to its students." [*Id.*] For the 2015-2016 school year, Anchorage contracted with Jefferson County Public Schools ("JCPS") to provide education for E.G. [*Id.*; DN 22 at 2.] JCPS held an Admissions and Release Committee ("ARC") Meeting on July 28, 2015 to devise an IEP for E.G.'s high school education. [DN 6 at 4; DN 22 at 2.] After that meeting, E.G.'s mother discovered that JCPS had failed to rely on E.G.'s most recent IEP from Anchorage in forming his new IEP. In other words, JCPS relied on an out-of-date IEP. In its administrative appeal decision, the ECAB found that although "Anchorage informed the parents on August 18, 2015 "that JCPS had agreed to hold an[other] ARC to correct the error . . . the parents indicated they were not interested in pursuing services at Jeffersontown High School or holding an additional ARC to correct the error." [DN 1-1 at 11 (ECAB Final Decision and Order).] The ECAB further stated that, "[a]t the hearing, each parent of [E.G.] acknowledged they had declined the offer by JCPS to have another ARC meeting to correct the IEP." [*Id.*]

On August 24, 2015, E.G.'s parents asked Anchorage to hold another ARC meeting with Anchorage personnel but *without* JCPS personnel present. Plaintiff claims that Anchorage refused to do so. [DN 6 at 4.] Thereafter, E.G.'s parents enrolled E.G. at the Bluegrass Center for Autism ("BCA"), which he still attends today. [*Id.* at 4–5.] E.G.'s parents then filed a Request for a Due Process Hearing on January 16, 2016, claiming that Anchorage violated its right to provide E.G. with a free appropriate public education ("FAPE") for the 2015-2016 school year in violation of the IDEA. [DN 6 at 5.] The due process hearing was held from March 29 to 31,

2016, and a decision was rendered on July 5, 2016. [*Id.*] Therein, Hearing Officer Paul Whalen determined that Anchorage provided appropriate education to E.G. and that BCA could not provide E.G. with an appropriate education. [*Id.*]

E.G.'s parents appealed the Hearing Officer's decision to the ECAB, which rendered a decision on November 14, 2016. [DN 1-1 at 21.] The ECAB held 1) that "Anchorage has no duty to consider a private placement [for E.G.] unless it is unable to provide FAPE through contract with a public school"; 2) that the ARC meetings were properly constituted; 3) that "the school did not have a procedural duty to give written notice regarding placement or refusal to change placement when it contracted with Jefferson County to provide high school services"; and 4) that "the process of developing the IEP has not been completed; [and] the case must be remanded to the LEA to convene an ARC meeting." [*Id.* at 3–11.] The ECAB's fifth and final holding was that, "if Jefferson [County] cannot implement the IEP, the Bluegrass Center for Autism would be an appropriate placement for [E.G.]." [*Id.* at 12–20.] At the end of its Order, the ECAB stated that "[t]his matter is remanded back to the ARC for action consistent with this decision." [*Id.* at 20.]

The IDEA at 20 U.S.C. § 1415(i) gives parties aggrieved by decisions made during the administrative process "the right to bring a civil action . . . in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). In reliance on this provision, Plaintiff commenced the instant action in this Court on December 14, 2016. [*See* DN 1 (Complaint).] Plaintiff later filed an Amended Complaint on January 24, 2017. [DN 6.] Plaintiff names multiple Defendants, including Anchorage Independent Public Schools ("Anchorage"); the Board of Education of Anchorage Independent Public Schools ("Board of Education"); the Kentucky Department of

3

Education; the Division of Learning Services; and Gretta Hylton, in her official capacity as the Director of the Division of Learning Services (collectively, "Defendants"). [*Id.* at 2–3.] In detail, Plaintiff seeks a reversal of certain portions of the ECAB's Final Decision and Order, an award of reasonable attorneys' fees and costs, reimbursement for the cost of the tuition during the 2015-2016 and 2016-2017 school years, an award of the future tuition for the remainder of E.G.'s high school career, and "relief from future action." [*Id.* at 1–2, 9.]

In Plaintiff's view, the ECAB's decision "reversed the hearing officer" by finding that JCPS's July 28 IEP was *not* reasonably calculated to provide E.G. with an adequate educational benefit and that the Bluegrass Center for Autism *was* a placement capable of implementing the kind of IEP E.G. would need. [*See* DN 6 at 5 (quoting ECAB Final Decision and Order).] Accordingly, on December 16, 2016, two days after Plaintiff instituted this lawsuit in federal court, Plaintiff also filed a motion to clarify the ECAB's Final Decision and Order, specifically requesting that the ECAB identify E.G. as the prevailing party such that he is entitled to attorney fees and an award of expenses related to E.G.'s private school. [DN 22-2 at 3.] The ECAB denied the motion to clarify on December 21, 2016, stating that, because E.G.'s parents had already initiated proceedings in this Court, the "ECAB cannot clarify the Final Order absent an order from the District Court directing it to do so." [*Id.*] However, in doing so, the ECAB noted at the outset that one of its findings in its November 14, 2016 Final Decision and Order remanding back to the LEA was "that the parents dropped out of the IEP process before it was completed." [*Id.* at 2.]

Herein, Anchorage moves to dismiss Plaintiff's claims for lack of subject matter jurisdiction under Rule 12(b)(1) and for judgment on the pleadings under rule 12(c) on the grounds that Plaintiff has failed to exhaust his administrative remedies. [DN 22 at 1 (Motion to

4

Dismiss).] Specifically, Anchorage argues that, because the ECAB remanded the case to Anchorage (the LEA), to convene an ARC meeting to develop an appropriate IEP for E.G., [DN 1-1 at 11], that the administrative process is incomplete. For the reasons that follow, the Court agrees.

STANDARD

Here, Anchorage moves to dismiss both under Federal Rules of Civil Procedure 12(c) and 12(b)(1). "For purposes of a motion for judgment on the pleadings [under Rule 12(c)], all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir. 1973)). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* at 581–82 (quoting *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir. 1999)). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991)).

For purposes of a motion to dismiss for lack of subject matter under Rule 12(b)(1) of the Federal Rules of Civil Procedure, such motions "generally come in two varieties." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). First, "[a] *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* Second, courts can "review[] a complaint under a *factual* attack, [in which] no presumptive truthfulness

applies to the factual allegations." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.,* 368 F.3d 569 (6th Cir. 2004).

DISCUSSION

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To protect these rights to free appropriate public education, the IDEA requires the development of an individualized education program ("IEP"), which is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d) of" the statute. 20 U.S.C. § 1401(14).

The IDEA requires each state or state educational agency "that receives assistance under this subchapter [to] establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a). Under the IDEA, parents who are dissatisfied that their child's IEP will provide a free adequate public education "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency." 20 U.S.C. § 1415(f).

Pursuant to Kentucky statutes and implementing regulations, "[a] parent or an LEA may initiate a due process hearing . . . relating to identification, evaluation, or educational placement of a child with a disability or the provision of FAPE to the child or the refusal to initiate or change the identification, evaluation, or educational placement of the child." 707 Ky. Admin. Regs. 1:340(8). After the hearing officer renders its decision, "[a] party to a due process hearing

that is aggrieved by the hearing decision may appeal the decision to members of the Exceptional Children Appeals Board as assigned by the Kentucky Department of Education." 707 Ky. Admin. Regs. 1:340(12). "A decision made by the Exceptional Children Appeals Board shall be final unless a party appeals the decision to state circuit court or federal district court." 707 Ky. Admin. Regs. 1:340(12).

As the Court explained above, E.G.'s parents obtained a due process hearing, received the hearing officer's decision, and appealed the hearing decision to the ECAB. The ECAB determined, in part, that "the process of developing the IEP ha[d] not been completed; [and] the case must be remanded to the LEA to convene an ARC meeting." [DN 1-1 at 6–11.] The ECAB explained that

> the July 28 IEP cannot be reasonably *calculated* to provide a meaningful educational benefit without utilizing the current [March 30, 2015] IEP, developed only a few months earlier . . . The ARC's calculations must consider the current IEP and the findings and evaluations therein. There must be an additional ARC meeting wherein this occurs. This matter is remanded back to the LEA to convene an ARC meeting that will utilize the March 30, 2015 IEP, and the evaluations upon which it is based, in developing an appropriate IEP for the student.

[DN 1-1 at 11.] In its decision, the ECAB repeatedly stated that it was "remanding to the ARC to complete the IEP development process, and consideration of private placement is premature until there is a properly developed IEP and a finding that it cannot be implemented by" JCPS. [*Id.* at 12.] Only if JCPS could *not* implement the IEP developed on remand did the ECAB determine that "the Bluegrass Center for Autism would be an appropriate placement for" E.G. [*Id.*]

In the instant motion, Anchorage contends that, because E.G.'s parents commenced this action *before* working with Anchorage and JCPS to convene another ARC meeting to develop another IEP for E.G., that Plaintiff failed to exhaust his administrative remedies. [*See* DN 22 at 9–12] Plaintiff makes multiple arguments in opposition. First, Plaintiff argues that the ECAB's

7

designation of its November 14, 2015 order as "Final and Appealable" is "binding on this Court" as a matter of law. [DN 27 at 1, 9.] Second, Plaintiff argues that Anchorage failed to raise the alleged failure to exhaust as an affirmative defense in its answer, and therefore that it was waived its right to raise the issue here. [*Id.* at 2.] Third, Plaintiff argues that, even if Defendant is correct the Plaintiff did not fully exhaust administrative remedies, "further pursuit of the administrative process in this case would be inadequate and futile." [*Id.* at 9.] Fourth, Plaintiff claims that resolution of this issue should be reserved until summary judgment.

1. **Whether Plaintiff Satisfied IDEA's Exhaustion Requirement**

All parties in this case acknowledge that "[t]he IDEA provides that plaintiffs must exhaust their administrative remedies before bringing suit in federal court to obtain relief that is also available under the IDEA." *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000), *amended on denial of reh'g* (May 2, 2000) (citing *Doe v. Smith*, 879 F.2d 1340, 1343–44 (6th Cir.1989), *Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935–36 (6th Cir.1989)). "Exhaustion not only 'enables the agency to develop a factual record' and 'apply its expertise,' but also allows an agency 'to correct its own mistakes,' thereby 'promoting accuracy, efficiency, agency autonomy, and judicial economy.'" *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 432 (6th Cir. 2016) (quoting *Donoho ex rel. Kemp v. Smith Cty. Bd. of Educ.*, 21 F. App's 293, 296 (6th Cir. 2001)). "These benefits are particularly valuable where the question touches on a traditional state and local function in which [courts] have little expertise, such as primary and secondary education." *Id.* (citing *Burilovich v. Bd. of Educ. of Lincoln Consol. Sch.*, 208 F.3d 560, 567 (6th Cir. 2000)).

Whether a party has exhausted the available administrative remedies requires courts to examine the administrative process created by the individual state in question. "[P]arties

8

'exhaust' state administrative remedies only when they properly present their claims to the relevant state administrative agency." *Gibson*, 655 F. App'x at 432 (citing *Children's Ctr. for Developmental Enrichment v. Machle*, 612 F.3d 518, 522 (6th Cir. 2010)). Here, Plaintiff indeed participated in Kentucky's administrative process by engaging in mediation, requesting and receiving a due process hearing, and appealing the hearing decision to the ECAB. *See* 707 Ky. Admin. Regs. 1:340. Kentucky regulations provide that "[a] decision made by the Exceptional Children Appeals Board shall be final unless a party appeals the decision to state circuit court or federal district court." 707 Ky. Admin. Regs. 1:340(12). Relying on this provision of the Kentucky regulations, Plaintiff claims that obtaining a final decision from the ECAB was the final step in Kentucky's administrative process, and therefore that Plainitff's were within their rights to pursue an appeal of the ECAB's decision in this Court. The Court disagrees.

The mere label of the ECAB's decision as "final and appealable" does not constitute a finding, as a matter of law, that Plaintiff exhausted all administrative remedies. Rather, the ECAB emphasized, repeatedly, that it was remanding the case in order for Anchorage to convene another ARC meeting to devise a proper IEP for E.G. relying on his March 30, 2015 IEP and accompanying evaluations from Anchorage. [DN 1-1 at 6, 11–12, 20.] Having failed to see the administrative process through on remand, Plaintiff failed to fully exhaust his administrative remedies.

Plaintiff cites *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423 (6th Cir. 2016) and argues that "A.G. and J.G. have followed virtually the same course in this case as the parents did in *Gibson*," and, "[i]f anything, A.G. and J.G. exhausted more remedies than the Plaintiffs in *Gibson*, yet neither the district court nor the Sixth Circuit found any error in [the *Gibson* Plaintiffs'] path." [DN 27 at 12–13.] Though *Gibson* does bear some similarity to the

facts of this case, there are also key differences. In *Gibson*, the child's parents requested and received a due process hearing, which resulted in a finding that the school district denied the child a FAPE "by failing to provide her with adequate reading and math goals and programming." *Gibson*, 655 F. App'x at 428. The parents appealed the hearing officer's decision, and the appeal board affirmed the hearing officer's determination that the child was denied a FAPE with regard to reading and math, but determined that, in all other respects the school district *had* provided the child with a FAPE. *Id.* at 429. However, *before* the appeal board rendered that decision, "the Gibsons came to federal court, alleging that they were prevailing parties who could collect attorney's fees." *Id.* Then, *after* the appeal board's decision was rendered, the school district filed suit challenging the finding that the child did not receive a FAPE with regard to reading and math. *Id.* The district court consolidated the parents' and the school board's cases and then dismissed the school district's complaint on the ground that it failed to exhaust administrative remedies by failing to appeal the hearing officer's decision as the Gibsons had done.

As Anchorage points out in its reply, however, the crucial difference between *Gibson* and this case is that, in *Gibson*, by the time the district court conducted its review of the administrative findings, "the [Ohio] administrative process . . . [*had*] resulted in a decision as to whether a FAPE was provided." [DN 28 (citing *Gibson*, 655 F. App'x at 429).] Specifically, the district "court reviewed and 'verified' the [appeal board's] findings of fact" and determined "that in most respects, the [appeal board] correctly concluded that [the school district] had provided [the child] with a FAPE." *Gibson*, 655 F. App'x at 429 (citing *Gibson v. Forest Hills Local Sch. Dist., Bd. of Educ.*, No. 1:11–CV–329, 2012 WL 1197896, at *4–11, *16–17, *19–28 (S.D. Ohio Apr. 10, 2012)). Indeed, in their motion, A.G. and J.G. acknowledge that the district court

10

in *Gibson* did not conduct its review until after the review officer finished its review of whether the IEP provided the child with a FAPE. [DN 27 at 12.]

Here, however, the ECAB expressly found that "[t]he ARC's calculations must consider the current IEP and the findings and evaluations therein. There must be an additional ARC meeting wherein this occurs" in order to "develop[] an appropriate IEP for the student." [DN 1-1 at 11.] The ECAB stated, in other words, that a consideration of the placement of E.G. in private school "is premature until there is a properly developed IEP *and* a finding that it cannot be implemented by" JCPS. [*Id.* at 12 (emphasis added).] Unlike in *Gibson*, there has been *no* such finding that a properly-developed IEP cannot be implemented by JCPS so as to provide E.G. with a FAPE. As such, *Gibson* is inapplicable in this case.

The Sixth Circuit has repeatedly made clear that, "[i]n order for a reviewing court to accord 'due weight' to state administrative proceedings, the court must accommodate the procedures contemplated by the Act so that there is an administrative decision to review." *Doe*, 879 F.2d at 1344 (holding that, because "[t]here was no such decision regarding the proposed IEP for the 1985–86 school year," plaintiff had not exhausted administrative remedies). Here, there has been no properly-developed IEP for E.G.'s high school education, that is, one that relies on his March 30, 2015 IEP, as the ECAB held was necessary. Accordingly, there is no administrative decision to review which addresses the adequacy of such a properly-developed IEP in terms of providing E.G. with a FAPE. This is the exact purpose of the administrative process required by the IDEA. *See Covington*, 205 F.3d at 918 (citing *Doe*, 879 F.2d at 1341–42) ("Indeed, the relief sought by the plaintiff . . . —a more appropriate educational placement, provided at public expense—is precisely the kind of relief that the state administrative process is equipped to afford.").

In sum, the ECAB, recognizing the importance and mandatory nature of the administrative process, remanded for further proceedings between Anchorage and E.G.'s parents. By bringing suit before finishing the administrative process on remand, Plaintiff's suit in this Court is premature for failure to exhaust administrative remedies. *See Doe ex rel. Doe v. Dublin City Sch. Dist.*, 453 F. App'x 606, 609–10 (6th Cir. 2011) (emphasizing the requirement that a plaintiff "fully invoke the administrative process.").

2. **Whether Anchorage waived its Exhaustion Defense**

Plaintiff argues, however, that Anchorage has waived its right to raise the defense of failure to exhaust administrative remedies. [DN 27 at 16–17.] Specifically, Plaintiff argues that a failure to exhaust administrative remedies is not a jurisdictional bar subject to a Rule 12(b)(1) motion, but an affirmative defense, and that Anchorage failed to raise this affirmative defense in its answer. [*Id.*]

Even assuming, without deciding, that a failure to exhaust must be raised as an affirmative defense, rather than a challenge to jurisdiction, the Sixth Circuit has explained that "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by [an affirmative defense], the complaint is subject to dismissal for failure to state a claim." *W.R. v. Ohio Health Dep't*, 651 F. App'x 514, 518 (6th Cir.), *cert. denied sub nom. W.R. v. Ohio Dep't of Health*, 137 S. Ct. 377 (2016) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). In their answer to Plaintiff's Amended Complaint, Anchorage and the Board of Education alleged that "Plaintiff has failed to state a claim upon which relief can be granted." [DN 8 at 4.] Here, Defendant moves to dismiss both on jurisdictional grounds under Rule 12(b)(1) and for failure to state a claim under Rule 12(c). Rule 12(h)(2) provides that the defense

of "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)" for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2)(B); *see Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Rule 12(h)(2) provides that the Rule 12(b)(6) defense of failure to state a claim upon which relief may be granted can be raised after an answer has been filed by motion for judgment on the pleadings pursuant to Rule 12(c)."). Because Anchorage and the Board of education raised the defense of failure to state a claim in their answer, [DN 8 at 4], and because an applicable affirmative defenses (such as failure to exhaust) is among the reasons that an action may be dismissed for failure to state a claim, the Court finds that Defendant has not waived its right to raise it in the 12(c) motion currently before the Court.

### 3. Whether Further Use of the Administrative Process Would be Futile or Inadequate

Finally, Plaintiff asserts that, even if the Court finds that Plaintiff has failed to exhaust his administrative remedies, that doing so would be futile or inadequate, and therefore that the Court should deny Defendant's motion to dismiss on that basis. [DN 27 at 17.] Indeed, "[t]here are 'narrow exceptions to the exhaustion requirement.'" *Donoho*, 21 F. App'x at 297 (quoting *Crocker*, 873 F.2d at 936). Specifically, "[e]xhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights." *Id.* (quoting *Covington*, 205 F.3d at 917).

Here, E.G.'s parents assert that going back to the administrative process would be futile and inadequate for three reasons. "First, because E.G. was denied a FAPE during the past two school years, the only possible remedy for this deprivation is monetary—a remedy unavailable at the administrative level." Indeed, the Sixth Circuit has embraced this argument where "the injured child has already graduated from the special education school, his injuries are wholly in the past, and therefore money damages are the only remedy that can make him whole."

13

*Covington*, 205 F.3d at 917. However, Plaintiff's reliance on *Covington* here is misplaced. Crucially, E.G.'s injuries, though they may be real, are not "wholly in the past," as he has *not* graduated from the Bluegrass Center for Autism, where he currently attends school. Rather, the possibility of a new IEP that does provide E.G. with a FAPE in the future is still possible, and therefore money is not the only possible remedy here.

Second, Plaintiff argues that further use of the administrative process would be futile because "Anchorage continues to maintain that it had provided E.G. with a FAPE notwithstanding the fact that it based its proposed IEP on outdated evaluations, outdated IEPs, and removed services which were known by all to be critical to his success with these explicitly outlined in earlier IEPs." [DN 27 at 18.] This does not appear to be correct, however. In its motion to dismiss, Anchorage fully acknowledges, following the ECAB's decision, that it committed the "procedural error of failing to consider Plaintiff's most recent IEP in developing a revised IEP for the 2015/2016 school year." [DN 22 at 9.] Moreover, Anchorage states that, pursuant to the ECAB's order remanding the case, it must "convene an[other] ARC meeting to complete the process of developing an IEP." [*Id.*] Because this shows that Anchorage recognizes the mistake it made in relying on the wrong IEP and the ECAB's order that a new IEP be properly developed, the Court disagrees that use of the administrative process would be futile or inadequate.

Third, Plaintiff contends that any failure to exhaust is the fault of Anchorage, and therefore that the Court should allow the Plaintiff to proceed in this Court. [DN 27 at 19.] Specifically, Plaintiff cites a case from the Western District of Michigan in which the court held:

> Where failure to exhaust is attributable to error or intransigence by state and local administrative authorities, a reviewing court has two options. First, the court may simply excuse an EHA plaintiff from exhausting his or her claims. This first option is usually followed where the error or intransigence renders administrative

14

> remedies futile or inadequate . . . Alternatively, the court may, after pointing out the previous defect in the administrative process, "return" the case to the administrative authorities for continuation of the process with the taint of the error removed . . . The Sixth Circuit endorsed this procedure in *Smith,* holding among other things that the district court should not have decided the merits of an EHA claim where a hearing officer's procedural error short-circuited the administrative process and left no substantive decision for the court to review.

*Waterman by Waterman v. Marquette-Alger Intermediate Sch. Dist.*, 739 F. Supp. 361, 366–67 (W.D. Mich. 1990) (citing *Doe*, 879 F.2d at 1343–44). Though the Court acknowledges that Anchorage erroneously relied on the wrong IEP in developing an IEP for E.G.'s high school education, as the Court explained above, the Court does not find that this "error or intransigence renders administrative remedies futile or inadequate." *Id.* at 366. As such, the Court opts for the "second option" discussed by the *Waterman* court, which is, having pointed out the error, to "'return' the case to the administrative authorities for continuation of the process with the taint of the error removed." *Id.* at 366–67.

Certainly, Anchorage committed an error when it relied on an outdated IEP. While that mistake is "far from exemplary, [Anchorage] has not clearly failed to follow the requirements of the Act in a manner that demonstrates that resort to the administrative process would have been [or will be] futile." *Doe ex rel. Doe*, 453 F. App'x at 609. In sum, the Court "cannot conclude that [A.G. and J.G.] met their burden of establishing that resort to the administrative process would have been futile or inadequate." *Id.* at 609–10.

4. **Whether the Court Should Reserve Ruling Until Summary Judgment**

Finally, Plaintiff contends that "Anchorage's Motion to Dismiss on exhaustion grounds rests on disputed facts" such that this Court should defer ruling on this case until the summary judgment stage of the litigation. [DN 27 at 19–20.] In detail, Plaintiff argues that "the parties disagree as to whether Anchorage abdicated its responsibility by refusing to convene another ARC with Anchorage personnel as requested by the parents, or whether the Plaintiffs appealed

prematurely." [*Id.*] While it may be true that the parties disagree as to this point, this disagreement has no bearing on whether Plaintiff properly exhausted all administrative remedies. Rather, the ECAB determined, and *Plaintiff agrees*, that Anchorage improperly relied on an out-of-date IEP when developing the IEP for E.G.'s high school education. As such, the ECAB remanded for Anchorage to convene another ARC meeting to develop an IEP by relying on the proper IEP and proper accompanying evaluations of E.G. Plaintiff's failure to finish the subsequent administrative process on remand results in the failure to exhaust. Accordingly, whether Anchorage did or did not "abdicate[] its responsibility by refusing to convene another ARC with Anchorage personnel" and without JCPS personnel present is irrelevant to the exhaustion determination. Even if Anchorage did "abdicate" this responsibility, further administrative proceedings are still necessary. Therefore, the Court need not defer ruling on this issue until summary judgment.

## CONCLUSION

The Court sympathizes with Plaintiff's assertion that the process of finding appropriate education for E.G. has been a long an arduous one. [DN 27 at 20.] However, "the relief sought by the [P]laintiff," that is, an "appropriate educational placement [for E.G.], provided at public expense[,] is precisely the kind of relief that the state administrative process is equipped to afford." *Covington*, 205 F.3d at 918. And because Plaintiff has not shown that resort to that administrative process would be futile or inadequate, the Court finds that the Plaintiff must complete the administrative process before bringing his claims in federal court. For these reasons, and the reasons outlined more fully above, **IT IS HEREBY ORDERED** that Defendant Anchorage Independent Public Schools' Motion to Dismiss, [DN 22], is **GRANTED**.

All claims in the above-captioned action shall be **DISMISSED WITHOUT PREJUDICE**, and the Clerk is directed to close the case. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

There being no just cause for delay, this is a final and appealable order.

Date:

cc: Counsel